IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FARMERS INSURANCE CO., INC. )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>(1) TIMOTHY DANIEL, as Special )<br>Administrator of the Estate of WILLIAM )<br>DANIEL; (2) BRAD PICCOLO; (3) BEN )<br>HAN; (4) JOHN COOPER; (5) SANDRA )<br>KNIGGE, Personal Representative of the )<br>Estates of NICHOLAS LEE KNIGGE, )<br>deceased, and LISA FERN KNIGGE, )<br>deceased, and as Guardian and next )<br>friend of A.M.F., minor daughter, )<br>L.R.K., minor son, M.N.K., minor )<br>daughter, and CHRISTOPHER LEE )<br>KNIGGE, adult son, )<br>)<br>Defendants. ) | Case Number CIV-07-1421-C |

## MEMORANDUM OPINION AND ORDER

Plaintiff filed a complaint under 28 U.S.C. § 2201 seeking a declaration that it has no obligation to defend or indemnify Defendant Timothy Daniel in multiple lawsuits currently pending in Oklahoma state court. (See Compl., Dkt. No. 1). Defendants Brad Piccolo, Ben Han, and Sandra Knigge ("the Defendants") filed a motion to dismiss and/or a motion for summary judgment (see Dkt. No. 28) to which the Plaintiff responded. (See Dkt. No. 33). The Defendants filed a reply (see Dkt. No. 34) and the Plaintiff filed a counter motion for summary judgment. (See Dkt. No. 31).[1]

---

[1] While Defendant John Cooper did not join the remaining Defendants' motion for summary judgment, he filed a response to the Plaintiff's counter motion for summary judgment (see Dkt. No.

## BACKGROUND

On June 24, 2004, William Daniel hired Interstate Helicopter to provide sight-seeing tours to party guests at the Elks Lodge in Cushing, Oklahoma. Brad Piccolo, Ben Han, John Cooper, and Nicholas Knigge went on a helicopter tour, and while on board, the helicopter crashed, killing Mr. Knigge and injuring Mr. Piccolo, Mr. Han, and Mr. Cooper. Four separate lawsuits were filed against William Daniel in the district court for Payne County, Oklahoma. At the time of the accident, William Daniel had a homeowners insurance policy issued by the Plaintiff. This policy provided limited liability coverage for certain occurrences resulting in bodily injury. After requesting that the Plaintiff provide coverage in these pending lawsuits, William Daniel died. His brother, Timothy Daniel, was appointed administrator of his estate and was substituted as the named defendant in the pending lawsuits. Plaintiff subsequently filed the present lawsuit, requesting this Court to declare its rights and obligations in terms of defending and indemnifying Timothy Daniel in the underlying lawsuits. All parties appear to agree that a valid insurance contract existed to provide coverage on the date of the accident,[2] but Plaintiff argues that an aircraft exclusion in the policy applies to preclude its liability.

---

35), adopting the responses filed by the remaining Defendants.

[2] The Plaintiff's filings indicate that "[a]t all relevant times, William Daniel was the named insured for policy number 08911851047, a homeowners policy issued by Farmers." (Dkt. No. 1 at 3; Dkt. No. 32 at 7). Additionally, neither party's filings raise the issue of whether or not the policy was a valid contract at the time of the helicopter crash.

After filing this lawsuit, the Plaintiff and Timothy Daniel entered into an agreed judgment declaring that, as to Timothy Daniel, the insurance policy at issue does not provide coverage for defense or indemnity with respect to the underlying lawsuits. The Defendants then filed a motion to dismiss and/or a motion for summary judgment. They argue that this Court should decline to exercise its jurisdiction to hear this lawsuit and instead permit the state court to determine the Plaintiff's liability. In the alternative, the Defendants argue that this Court should grant summary judgment in their favor because the terms of the policy unambiguously indicate that the aircraft exclusion does not apply and that the Plaintiff is therefore obligated to provide coverage in the underlying lawsuits.

## **STANDARD OF REVIEW**

A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the litigation under applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine only if it is such that a reasonable jury could find in favor of the nonmoving party. Id. The moving party bears the burden of demonstrating the lack of a genuine issue about any material facts. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Once this burden is met, the nonmoving party must then respond and introduce specific facts demonstrating a genuine issue of material fact. Fed. R. Civ. P. 56(e)(2). When considering a motion for summary judgment, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party

opposing the [summary judgment] motion.'" Scott v. Harris, ___ U.S. ___, ___, 127 S.Ct. 1769, 1774 (2007) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

The standards for granting a motion for summary judgment do not change simply because cross motions have been filed. Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). In this situation, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Schwabenbauer v. Bd. of Ed. of City School Dist. of City of Olean, 667 F.2d 305, 314 (2d Cir. 1981). Because such motions are treated separately, "denial of one does not require the grant of the other." Buell Cabinet Co., Inc. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979).

## **DISCUSSION**

*1. Defendants' Motion to Dismiss*

The Defendants initially urge that this lawsuit should be dismissed for lack of subject matter jurisdiction because there is no live controversy.[3] The existence of a "case or controversy" is a prerequisite to federal jurisdiction under both the U.S. Constitution and the Declaratory Judgment Act. (U.S. Const. art. III, § 2, cl. 1; 28 U.S.C. § 2201). The analysis

---

[3] The Plaintiff claims in its response to Defendants' motion to dismiss that the Defendants have waived any jurisdictional arguments by admitting that jurisdiction in this Court was proper in the Joint Status Report and Discovery Plan submitted to this Court. (See Dkt. No. 25). However, this argument is without merit since the lack of a live controversy is an issue of subject matter jurisdiction, which is not waivable and which may be raised by the court sua sponte. United States v. Cotton, 535 U.S. 625, 630 (2002); First State Bank & Trust Co. of Guthrie, Okla. v. Sand Springs State Bank of Sand Springs, Okla., 528 F.2d 350, 353 (10th Cir. 1976). Therefore, any statements made in the Joint Status Report have no bearing on this decision.

under the Declaratory Judgment Act is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941). The difference between an actual controversy and an abstract question has long been considered a matter of degree. Id.

The existence of a contingency does not preclude the finding of a live case or controversy, and courts must instead consider the likelihood that the contingency will occur. Associated Indem. Corp. v. Fairchild Indus., Inc., 961 F.2d 32, 35 (2d Cir. 1992). This analysis is very common in the insurance context, with the Second Circuit noting that "litigation over insurance coverage has become the paradigm for asserting jurisdiction despite 'future contingencies that will determine whether a controversy ever actually becomes real.'" Id. (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 2757, at 586 (2d ed. 1983)). The Supreme Court has held that a live controversy exists when an insurance company brings an action for a declaratory judgment against an injured party who is currently suing the insured in state court, regardless of the fact that there has been no determination with respect to the insured's liability. Md. Cas. Co., 312 U.S. at 273-74. The Court based its decision on the fact that, if the injured party obtained a judgment against the insured, state law permitted him to proceed directly against the insurance company should the insured fail to satisfy the judgment within thirty days. Id.

Here the Defendants argue that there is no live controversy as a result of the agreed judgment entered by this Court on March 5, 2008. The Defendants claim this judgment provided the Plaintiff with a declaration that it had no duty to defend Mr. Daniel in the underlying lawsuit and that, consequently, the only thing left to be decided is the hypothetical issue of whether it may have to provide coverage in the future should the state court enter a final judgment against Mr. Daniel. Oklahoma courts permit an injured party, having obtained a judgment against an insured who then fails to satisfy that judgment, to bring a garnishment proceeding against the insured's insurance company under 12 Okla. Stat. § 1171. Md. Cas. Co. v. Peppard, 1915 OK 1029, 157 P. 106. The Defendants' lawsuits are currently pending in Oklahoma state court, and should they obtain a judgment against Mr. Daniel that is not satisfied,[4] they may proceed directly against the Plaintiff. Further, one court even found that a controversy still exists between the insurance company and the injured party, despite the fact that the insurance company obtained a default judgment against the insured. Fed. Kemper Ins. Co. v. Rauscher, 807 F.2d 345 (3d Cir. 1986). As a result, this Court finds that a live controversy in fact exists.[5]

---

[4] Plaintiff indicates in its response to the Defendants' motion to dismiss and/or for summary judgment that William Daniel's estate is virtually judgment proof because there is no probate estate and no probate assets. (See Dkt. No. 32, at 2). It seems, then, that the only real contingency in this case is whether a judgment will be rendered against Mr. Daniel. The likelihood that the contingency will occur in this case appears even stronger than it was in Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270 (1941), where there were no specific allegations that the defendant would fail to satisfy a judgment should one be rendered against him.

[5] In Knight v. Miller, et al., 2008 OK 81, ___ P.3d ___ (Okla. 2008), decided on September 16, 2008, the Oklahoma Supreme Court determined that an injured party may not maintain a declaratory judgment action against the insurance company in state court until a judgment has been

The Defendants next argue that this Court should decline to exercise its jurisdiction under 28 U.S.C. § 2201 due to the pending state court cases. It is well established that abstention is only proper in a small minority of cases. New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 359 (1989). Congress defines the extent of federal judicial jurisdiction,[6] and "[w]hen a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction." Willcox v. Consol. Gas Co. of N.Y., 212 U.S. 19, 40 (1909). Whenever there is parallel state court litigation, the Colorado River doctrine mandates that a federal court may abstain from exercising jurisdiction only in "exceptional circumstances."[7]

---

rendered against either the insurance company or its insured. This case does not dispose of this inquiry, however. First, Knight is a state case, and federal courts apply federal law in determining whether a case or controversy exists. See Fed. Kemper, 807 F.2d at 352 ("[T]he federal rules respecting declaratory judgment actions, apply in diversity cases. While state law must determine the substantive rights and duties of the parties to the insurance contract, the question of justiciability is a federal issue to be determined only by federal law."). Second, the rights of an insurer certainly differ from the rights of an injured person who neither is a party to the insurance contract nor has a binding judgment against either the insurer or the insured.

[6] U.S. Const. art. III, § 1; Kline v. Burke Constr. Co., 260 U.S. 226, 233-34 (1922) (noting that Congress "may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution").

[7] In Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), the Supreme Court examined how federal courts should proceed when faced with a situation where they shared concurrent jurisdiction with state courts. Due to the "virtually unflagging obligation" of federal courts to hear cases within their jurisdiction, the Court noted that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention. The former circumstances, though exceptional, do nevertheless exist." Id. at 818.

In the context of the Declaratory Judgment Act, however, courts are given more discretion in deciding whether to exercise their jurisdiction. Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995). Because the Act provides a nonobligatory remedy,[8] district courts may decline to hear a case, even if it would otherwise satisfy jurisdictional requirements. Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942); Wilton, 515 U.S. at 288 (noting that "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."). In deciding whether to exercise its discretion to decline jurisdiction, district courts must determine whether the issues between the parties in the federal litigation can be better resolved in the state court proceedings. Brillhart, 316 U.S. at 495. To make this determination, courts should consider, among a variety of factors, the scope of the state court litigation and whether all claims can be adequately adjudicated in that forum. Id.

The litigation currently pending in state court is solely between the Defendants and Mr. Daniel.[9] The Plaintiff is not a party to those lawsuits. Also, the issue of liability

---

[8] The language of the Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Supreme Court noted that, in passing the Act, "Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." Wilton, 515 U.S. at 288.

[9] The Defendants are also suing OG&E, Interstate Helicopter, James Johnson (part owner of the aircraft), and the estate of Darrel Jameson (the pilot) (see Dkt. No. 28, Ex. 3).

8

insurance coverage likely could not be discussed at all in those proceedings.[10] As the Plaintiff indicates in its response to the Defendants' motion to dismiss, should the lawsuits against Mr. Daniel proceed in state court, it would take a role in settlement negotiations. (See Dkt. No. 32, at 9). There is no indication that the issues between the parties in the present federal case could be better resolved in the underlying state court litigation. While the Plaintiff could have filed an action for declaratory judgment in state court, it instead chose to do so in this Court, and it is therefore entitled to have its claim heard in this forum. Because this Court has jurisdiction to render a declaratory judgment here, and because the pending state court litigation would not be able to adequately address the issues raised by the Plaintiff, this Court declines to abstain from exercising its jurisdiction and will permit the case to proceed.

*2. Plaintiff's Motion for Summary Judgment*

Because subject matter jurisdiction in this case is based upon diversity under 28 U.S.C. § 1332, the Court applies Oklahoma law to determine the Plaintiff's liability. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). The Plaintiff argues that it is entitled to summary judgment in its favor because the aircraft exclusion found in the policy applies to any use of an aircraft, regardless of whether the insured owns or rents the aircraft.

---

[10] The Oklahoma Evidence Code provides that "[e]vidence of the existence of liability insurance is not admissible upon the issue of negligence or wrongful action." 12 Okla. Stat. § 2411. Such evidence may be admissible if offered for another purpose, however.

The Court finds there are no genuine issues of material fact to be resolved in this case. All parties agree that William Daniel was insured by a valid policy issued by the Plaintiff at the time of the helicopter crash. All parties agree that Mr. Daniel paid for the services of the helicopter and its pilot. All parties agree that Brad Piccolo, Ben Han, John Cooper, and Nicholas Knigge were all injured or killed as a result of the crash.[11]

The final issue is whether the Plaintiff is entitled to summary judgment as a matter of law, which hinges on whether the aircraft exclusion applies to preclude the Plaintiff's liability for the helicopter crash. Under Oklahoma law, an insurance policy is in essence a contract. Spears v. Shelter Mutual Ins. Co., 73 P.3d 865, 868 (Okla. 2003). "The terms of the parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intentions of the parties as it existed at the time the contract was negotiated." 15 Okla. Stat. § 154; Dodson v. St. Paul Ins. Co., 1991 OK 24, 812 P.2d 372, 376.

The policy issued by the Plaintiff states:

We do not cover **bodily injury, property damage** or personal injury which:

---

[11] The only potential factual dispute remaining is whether William Daniel contracted with Interstate Helicopter for a business purpose. The Plaintiff asserts in its complaint that "William Daniel, an attorney, rented the helicopter for purposes of networking with clients." (Dkt. No. 1). The Plaintiff further asserts in its response to the Defendants' motion to dismiss and/or motion for summary judgment that it reserves the defense that William Daniel hired Interstate Helicopter as a business pursuit. (See Dkt. No. 32). However, because the Court grants summary judgment in favor of the Plaintiff on other grounds, this fact is not material for summary judgment purposes since, if it were resolved in favor of the Defendants, the outcome of the suit would remain the same. ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).)

> . . . .
>
> 7. results from the ownership, maintenance, use, loading or unloading of:
>
>> a. **aircraft**
>> b. **motor vehicles**
>> c. jet skis and jet sleds or
>> d. any other watercraft owned or rented to an **insured** and which:
>>
>>> (1) has more than 50 horsepower inboard or inboard-outboard motor power; or
>>>
>>> (2) is powered by one or more outboard motors with more than 25 total horsepower; or
>>>
>>> (3) is a sailing vessel 26 feet or more in length
>
> . . . .

(Dkt. No. 1, Ex. 1.1 at 15). The Defendants argue that the language "owned or rented to an insured" modifies all the listed items instead of just "watercraft." The Plaintiff argues that the language in (d) is confined solely to that provision and therefore does not apply to use of an aircraft.

The Court finds that the terms of this provision are clear. The plain language of the policy states "[w]e do not cover bodily injury . . . which results from the . . . use . . . of aircraft." It could not be plainer, as a simple matter of paragraph construction, that the words "owned or rented to an insured" apply solely to the watercraft specified in paragraph (d). The language is confined to paragraph (d), and the policy goes on to state the types of watercraft owned or rented by the insured that are not covered. This language clearly

indicates that any injuries directly resulting from aircraft use are not covered by the policy, regardless of whether the insured owns or rents the aircraft. The Defendants were injured in a helicopter crash, which is clearly a direct result of using an aircraft. Therefore, their injuries are not covered by the policy due to the aircraft exclusion set forth above.

There is nothing ambiguous about this language, and the plain meaning of the provision seems to accord with the intent of the parties. The policy between the Plaintiff and William Daniel was one for homeowners insurance, which is intended to protect the insured from "risks and activities associated with the home." Steven Plitt, et al., 9A Couch on Insurance § 128:1. Applying the aircraft exclusion to this situation and therefore precluding the Plaintiff's liability is consistent with this intent. Therefore, the Court finds that the aircraft exclusion applies regardless of whether the aircraft is owned or rented by the insured.

Accordingly, the Plaintiff's motion for summary judgment (Dkt. No. 31) is GRANTED. The Defendants' motion for summary judgment (Dkt. No. 28) must therefore be DENIED. Judgment shall be entered accordingly.

IT IS SO ORDERED this 19th day of September, 2008.

_____
ROBIN J. CAUTHRON
United States District Judge